UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| .55 ACRES OF LAND, MORE OR LESS, | ) Case No. 4:22-cv-01050-SRC |
| SITUATED IN THE CITY OF ST. | ) |
| LOUIS, MISSOURI, and LIBERTY | ) |
| PLAZA, LLC, | ) |
| | ) |
| Defendants. | ) |

**Memorandum and Order**

The federal government condemned land near the VA Medical Center in St. Louis, and in this case seeks to establish the amount of just compensation it must pay the former owner, Liberty Plaza. The parties sought the opinions of experts to appraise the land, and now, the United States moves to exclude one of Liberty Plaza's experts, Justin Strohm, for failure to timely disclose and to comply with the expert-disclosure rule. Because the United States fails to carry its burden of demonstrating that it suffered prejudice from any untimely disclosure, the Court denies its motion.

**I.      Background**

In September 2022, the United States exercised its power of eminent domain to take approximately .55 acres of land at 1015 North Grand Boulevard in St. Louis, Missouri. Doc. 1. Its declaration of taking explains that the Department of Veterans Affairs will use the land for an

expansion of the VA Medical Center.  Doc. 1-1 at 1–4.[1]  Before the taking, Liberty Plaza held title to the plot by general warranty deed.  *Id.* at 9.

The parties dispute the amount of just compensation due.  *See* doc. 40 at 2.  To that end, both parties timely disclosed case-in-chief experts.  *Id*.  The Court's case-management order required that the parties make all case-in-chief expert disclosures no later than July 25, 2023, and rebuttal expert disclosures no later than September 18; the parties agreed to extend those deadlines to August 18 and October 3, respectively.  Docs. 29, 33–34.  Liberty Plaza did not disclose Justin Strohm as a case-in-chief expert.  *See* doc. 40 at 2; doc. 50 at 2.  Instead, Strohm is a real estate agent who had listed the property for sale at the time of the taking, and in its initial disclosures on February 15, 2023, Liberty Plaza identified him as a fact witness.  Doc. 50 at 2.  In its March 29 responses to the United States' first set of interrogatories, Liberty Plaza explained that he would "testify as to his opinion regarding the value of the property including its highest and best use."  Doc. 40-3 at 3.

The United States deposed Strohm on September 28.  Doc. 40-1.  Two days before, he produced a one-page email describing his valuation of the property, including its highest and best use.  Doc. 40 at 2.  The document explained why he would seek at least $2.1 million for the sale of the land, comparing the property to similar and nearby plots, and citing to the dollar volume of the of year-to-date building permits.  Doc. 40-4.  At Strohm's deposition, the United States questioned Strohm regarding his past experiences as a witness, his credentials, his employment history, his experience and methods for valuing real property, and his rationale for his valuation of the property at issue.  *See* doc. 40-1.  Two weeks after Strohm's deposition, on October 10,

---

[1] The Court cites to page numbers as assigned by CM/ECF.

2

Liberty Plaza deposed the United States' case-in-chief expert.  *See* doc. 40 at 2; doc. 50-1 at 1; doc. 50-2 at 1.

The United States, convinced that Strohm's document and opinions reflected that of an expert, twice raised to Liberty Plaza the failure to disclose him as a case-in-chief expert.  Doc. 40 at 2.  On October 18, one day after the parties' second conversation on the matter, Liberty Plaza disclosed Strohm as a rebuttal expert with an accompanying report that repeated, nearly verbatim, the prior email.  *Id.*; doc. 50 at 2; *compare* doc. 40-4 *with* doc. 40-6 at 4–5.  The following week, the United States filed this motion, essentially arguing that the Court should exclude Strohm's opinions because they are properly understood as untimely-disclosed case-in-chief testimony.  Doc. 40 at 2–3.  It also argues that Liberty Plaza's error is prejudicial because it only "learned the full extent of Mr. Strohm's opinions at his deposition, limiting its ability to probe those opinions"; because it "had less than three weeks from the deposition until the amended rebuttal report deadline, restricting its ability to prepare rebuttal"; and because "any remedy but preclusion would require [it] to incur added cost and delay."  *Id.* at 3.  Liberty Plaza counters by arguing that it timely and properly disclosed Strohm as a rebuttal expert, and that it needn't have met the case-in-chief-disclosure deadline.  Doc. 50 at 2–3.  It also insists that the United States did not suffer prejudice because the United States "spent hours deposing Strohm, had all of the information that was listed in his report[,] and extensively questioned him as an expert witness."  *Id.* at 3.

## II.     Legal standard

Federal Rule of Civil Procedure 16(B)(3)(b)(1) empowers the federal courts to enter scheduling orders governing the timing of disclosures made under Rule 26(a).  Rule 26(a), in turn, governs, in relevant part, the disclosures of expert witnesses.  And Rule 37(c)(1) provides

3

that "[i]f a party fails to . . . identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information to supply evidence . . . unless the failure was substantially justified or harmless."  Together, these rules allow courts to "set time limits for disclosure of initial and rebuttal expert witness testimony," *Wegener v. Johnson*, 527 F.3d 687, 691 (8th Cir. 2008), and to "exclude untimely evidence unless the failure to disclose was either harmless or substantially justified," *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998).

"When a party fails to provide information or identify a witness in compliance with Rule 26(a) . . . the district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case," including to "exclude the information or testimony as a self-executing sanction." *Wegener*, 527 F.3d at 692 (citing Fed. R. Civ. P. 37(c)(1)).  "When fashioning such a remedy, the district court should consider, *inter alia*, the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Id.*  Other relevant factors reflect the wholistic consideration involved:

> [T]he reason for failing to name the witness, . . . the opposing party's need for time to prepare for the testimony, . . . the prejudice or surprise in fact of the party against whom the excluded witness would have testified[,] the ability of that party to cure the prejudice[,] the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case[,] . . . [and the] bad faith or willfulness of the party failing to comply with the court's order.

*Marti v. City of Maplewood, Mo.*, 57 F.3d 680, 683 (8th Cir. 1995) (citations and internal quotation marks omitted).

**III.    Discussion**

4

The parties devote the bulk of their briefing to whether Liberty Plaza timely and properly disclosed Strohm in his capacity as an expert witness. *See* docs. 40, 50. Regardless of whether Liberty Plaza properly made its disclosures, the United States only prevails in excluding Strohm's testimony if Liberty Plaza's errors were not "substantially justified or harmless." Fed. R. Civ. P. 37(c)(1); *see Trost*, 162 F.3d at 1008. In other words, even assuming without finding Liberty Plaza's error, the Court will only exclude Strohm's testimony if the United States shows it suffered prejudice as a consequence of that error.

The United States, however, has not demonstrated prejudice as a consequence of Liberty Plaza's errors. The United States' discussion of prejudice reads simply:

> Nor were [Liberty Plaza's] failures harmless. First, Plaintiff learned the full extent of Mr. Strohm's opinions at his deposition, limiting its ability to probe those opinions. . . . Second, Plaintiff had less than three weeks from the deposition until the amended rebuttal report deadline, restricting its ability to prepare rebuttal. . . . Third, any remedy but preclusion would require Plaintiff to incur added cost and delay for Defendant's avoidable errors.

Doc. 40 at 3. But those statements leave the Court to infer, on its own, that the United States suffered prejudice. First, the United States claims that the brevity of Strohm's report limited its ability to probe his opinions—but it does not explain how or why. Nor does the brevity of his report render it insufficient as an expert report under Rule 26: Strohm's deposition transcript reflects that his opinions are effectively based on the contents of his email and report. *Compare* doc. 40-1 *with* docs. 40-4, 40-6. At Strohm's deposition, the United States thoroughly questioned Strohm regarding his past experiences as a witness, his credentials, his employment history, his experience and methods for valuing real property, and his rationale for his valuation of the property at issue in this case. *See* doc. 40-1. The United States deposed him, in short, as an expert witness regarding the property's value. It does not now articulate how it would have deposed Strohm differently if not for Liberty Plaza's errors. Further, at the close of Strohm's

deposition, the United States made an on-the-record request that he produce certain materials and that the deposition remain open to "see if we have additional questions for [him]," to which Liberty Plaza assented. *Id.* at 14. Accordingly, the United States has had ample opportunity to glean the full extent of and reasons supporting Strohm's opinions, and has suffered no prejudice on this point as a consequence of any error in Liberty Plaza's disclosure.

Second, the United States complains it had merely three weeks in which to prepare a rebuttal to Strohm's testimony. Doc. 40 at 3. But it does not claim that it has decided to present a rebuttal witness to counter Strohm's testimony, nor does it claim that but for that limited timeframe, it would have succeeded in presenting rebuttal testimony. In other words, the United States has said nothing about how that three-week limitation prevented it from obtaining the rebuttal evidence or testimony it sought. Third, the United States claims that it will suffer "added cost and delay" if the Court does not exclude Strohm's testimony—but other than this conclusory statement, it does not explain why any error in Liberty Plaza's disclosure would cause such added cost or delay, or what that cost and delay would be.

The Eighth Circuit has explained that when considering whether to exclude evidence due to a Rule 26 violation, courts should conduct a wholistic analysis. "[T]he district court should consider, *inter alia*, the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Wegener*, 527 F.3d at 692. Other relevant factors include whether the delinquent party has failed to name the witness and the opposing party's need to prepare for the testimony. *Marti*, 57 F.3d at 683. Here, the court has considered these factors in a wholistic analysis, and finds that even assuming Liberty Plaza's errors, the exclusion of Strohm's opinions is not appropriate. Liberty Plaza did

6

not altogether fail to name Strohm as a witness; it provided his name in its initial disclosures, and in its responses to the United States' first set of interrogatories, it stated that Strohm would "testify as to his opinion regarding the value of the property including its highest and best use." Doc. 40-3 at 3. For the same reason, the United States cannot claim surprise at Strohm's testimony. Further, the importance of Strohm's testimony weighs against its exclusion: this dispute turns on the valuation of the relevant property, and his is one of three opinions on that topic.

### IV.  Conclusion

The Court does not condone the failure of Liberty Plaza's counsel to timely disclose Strohm as a case-in-chief expert. Strohm is no rebuttal expert, and counsel should have owned their mistake, and been forthright about it, rather than muddle the distinction between case-in-chief and rebuttal evidence. But given the lack of prejudice to the United States, the Court will not visit the compounding of that mistake on Liberty Plaza. For the reasons described above, the Court denies the United States' [40] Motion to Exclude Justin Strohm's expert testimony for failure to comply with the Federal Rules and this Court's [29] Case Management Order. *See also* docs. 33–34.

So ordered this 10th day of February 2024.

_SL R. CR_
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE

7